# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CASE NO. 3:23-CV-00774-FDW

| CATRINA CASON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
| Defendant. | ) |  |

**THIS MATTER** is before the Court on Claimant Catrina Cason's Social Security Brief, (Doc. No. 9), Defendant's Brief, (Doc. No. 11), and Plaintiff's Reply Brief, (Doc. No 12).[1] Claimant, through counsel, seeks judicial review of an unfavorable administrative decision on her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter has been fully briefed, (Doc. Nos. 9, 11, 12), and is ripe for ruling.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth herein, this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g)[2] for proceedings consistent with this Order.

## I. BACKGROUND

On August 16, 2021, Claimant filed a Title II application for a period of disability and DIB, alleging disability since October 27, 2020. (Tr. 17.) Claimant's claim was initially denied on November 3, 2021. (Tr. 75.) Claimant's claim was again denied at the reconsideration level on

---

[1] According to Federal Rule of Civil Procedure Supplemental Social Security Rule 5, an "action is [now] presented for decision by the parties' briefs[,]" rather than the parties filing dispositive motions.

[2] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

April 14, 2022. (Tr. 87.) On May 13, 2022, Claimant requested a hearing before an ALJ. (Tr. 107.) A telephonic hearing was held before ALJ Susan Poulos in Charlotte, North Carolina, on February 8, 2023. (Tr. 35.)

At the hearing, Claimant testified that she left her job as a certified nursing assistant in February 2018 when she had her daughter and has not worked or applied for jobs since then. (Tr. 44.) She further testified that she is "exhausted all the time," has "constant flares" related to her lupus and fibromyalgia, is "in pain every day," and suffers from frequent migraines and headaches. (Tr. 45, 53.) She also testified that she has "to go to several doctor's appointments" and struggles with day-to-day activities, including spending time with her children. (Tr. 45.)

On April 28, 2023, ALJ Poulos issued an unfavorable decision, finding Claimant "was not under a disability, as defined in the Social Security Act, at any time from October 27, 2020, the alleged onset date, through December 31, 2022, the date last insured." (Tr. 30.) Applying the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act, the ALJ made the following findings of fact and conclusions of law: At step one, the ALJ found Claimant did not engage in substantial gainful activity between October 27, 2020, through December 31, 2022. (Tr. 20.) At step two, the ALJ found the following of Claimant's impairments to be severe: lupus, fibromyalgia, migraine headaches, and obesity. (Id.) At step three, the ALJ determined Claimant did not have an impairment, or a combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1. (Tr. 23.) Before proceeding to step four, the ALJ determined the Claimant had:

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can frequently but not constantly climb ladders, ropers, or scaffolds, and can tolerate frequent but not constant exposure to, or should avoid

concentrated exposure to, workplace hazards such as unprotected heights and dangerous machinery.

(Tr. 24.) Then, at step four, the ALJ found Claimant could perform past relevant work as a certified nursing assistant and as a medical assistant. (Tr. 28.) Based on this finding, the ALJ determined Claimant was not disabled as defined under the Social Security Act between October 27, 2020, and December 31, 2022. (Tr. 30.)

The Appeals Council denied Claimant's subsequent request for review and, as a result, the ALJ's decision became the final decision of the Commissioner. (Tr. 1.) Plaintiff has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of the Social Security Commissioner's final decision to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401, 28 L. Ed. 2d 842 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). When examining a disability determination, a reviewing court is required to uphold the determination if an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not reweigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "It 'consists of more than a mere scintilla of evidence but may be less than a preponderance.'" Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (quoting Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (mem.) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See id.; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most the claimant can still do despite her physical and mental limitations that affect her ability to work.'" Lewis, 858 F.3d at 861–62

(quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (cleaned up). In <u>Kennedy v. Saul</u>, the Fourth Circuit explained the considerations applied before moving to step four:

> In assessing a claimant's RFC, "[t]he ALJ must consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect the claimant's ability to work," offering "a narrative discussion describing how the evidence supports each conclusion." <u>Thomas [v. Berryhill]</u>, 916 F.3d [307,] 311 [(2019)] (brackets and internal quotation marks omitted). After "the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." <u>Id.</u> Thus, we have explained that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." <u>Id.</u> "The ALJ's logical explanation[] is just as important as the other two" requirements because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." <u>Id.</u>
>
> "[A]n ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." <u>Lewis</u>, 858 F.3d at 865-66; <u>see</u> 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c) (2019). The ALJ first "looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms" and then "evaluate[s] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." <u>Lewis</u>, 858 F.3d at 866. The second step "requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." <u>Id.</u>
>
> The regulations instruct ALJs not to reject a claimant's reports about the intensity and persistence of her symptoms or about how her symptoms affect her ability to work solely because the medical evidence does not substantiate the reports. <u>Id.</u> Instead, when examining the credibility of an individual's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual, and any other relevant evidence." Social Security Rule (SSR) 96-7p, 1996 WL 374186, at *1 (July 2, 1996). An ALJ's assessment of a claimant's credibility regarding the intensity and persistence of her symptoms is entitled to great weight when it is supported by the record. <u>See</u> <u>Hancock [v. Astrue]</u>, 667 F.3d [470,] 472 [(2012)]. "Significantly, however, the ALJ must build an accurate and logical bridge from the evidence to his conclusion that the claimant's testimony was not credible." <u>Brown [v. Comm'r Soc. Sec. Admin.]</u>, 873 F.3d [251,] 269 [(2017)] (brackets and internal quotation marks omitted).

781 F. App'x 184, 186–87 (2019).

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

## III. ANALYSIS

On appeal, Claimant raises four contentions of error: (1) The ALJ's RFC finding conflicted with the ALJ's B criteria findings about Claimant's mental limitations; (2) The ALJ did not account for absenteeism caused by Claimant's impairments and frequent treatment; (3) The ALJ improperly relied on benign findings when those do not correlate with symptoms of lupus, fibromyalgia, headaches, or chronic kidney disease; and (4) The ALJ engaged in speculation. (Doc. No. 9, p. 6.) The Court agrees that remand is warranted based on Claimant's second contention of error and therefore addresses only that argument.

Relying on Dennis v. Kijakazi, No. 21-2078, 2023 WL 2945903 (4th Cir. 2023),[3] Claimant argues that the ALJ did not consider how her frequent medical appointments impact her ability to

---

[3] Although Dennis was not published, the Court considers it highly persuasive. Moreover, since Dennis was decided, four separate district courts have remanded social security proceedings based on Dennis due to the ALJ's failure to discuss absenteeism. See Daisy H. v. O'Malley, No. 3:22-cv-00688-DJN-SLS, 2024 WL 393273 (E.D. Va. Jan. 12, 2024); Octavia R. v. Kijakazi, No. 22-2959-BAH, 2023 WL 4686578 (D. Md. July 21, 2023); Clinton C. v. Kijakazi, No.: 1:22-cv-00489, 2023 WL 4167878 (S.D. W. Va. May 10, 2023); Michelle C. v. Comm'r of Soc. Sec. Admin., No. 3:23-cv-00037, 2024 WL 1297686 (S.D. Ohio Mar. 27, 2024).

attend work on a regular basis—that is, eight hours a day, five days per week. (Doc. No. 9, p. 10.) In <u>Dennis</u>, the Fourth Circuit reversed and remanded because "the ALJ failed to discuss and explain the record evidence regarding Dennis' absenteeism" after Dennis received medical treatment on 71 days in two years. <u>Dennis</u>, 2023 WL 2945903 at *2, *2 n.2, *5. The ALJ in <u>Dennis</u> questioned the vocational expert about absenteeism, and the vocational expert testified that Dennis could not miss more than seven to ten days in her first year of work without being "subject to firing." <u>Id.</u> at *3. Nevertheless, the ALJ's decision "did not explicitly conclude whether absenteeism would preclude Dennis from substantial gainful employment." <u>Id.</u> at *1.

The Fourth Circuit remanded, noting that "[t]here is evidence supporting Dennis' need to miss work in the administrative record, and the ALJ's decision does not discuss this evidence, nor does the ALJ's decision adequately explain why the evidence should be rejected." <u>Id.</u> at *5. "Nowhere in the denial did the ALJ address: (1) the frequency of Dennis' medical treatment, (2) how the frequency of Dennis' medical treatment would impact absenteeism, or (3) how Dennis' frequent medical treatment would impact the [vocational expert's] testimony that missing more than 7 to 10 days per year 'would be subject to firing.' This was error because we can only guess why the ALJ failed to address the obvious implications of Dennis' frequent medical treatment." <u>Id.</u> at *5 (citation omitted). The Fourth Circuit also reasoned that it "could not determine whether the hypothetical question posed to the [vocational expert] included all of Dennis' functional limitations, as it needed to do in order to be useful, because the ALJ never discussed the evidence in the administrative record related to Dennis' absenteeism." <u>Id.</u> at *5 (citing <u>Hines v. Barnhart</u>, 453 F.3d 559, 566 (4th Cir. 2006) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.")).

Here, like in <u>Dennis</u>, Claimant missed work on a frequent basis for medical appointments. She alleges that she had "79 treatment visits, ER visits, imaging appointments, infusion appointments, etc." in a span of 26 months. (Doc. No. 9, p. 9.) At the hearing, the ALJ and the vocational expert engaged in the following exchange:

> ALJ: And generally, what's the tolerance for unexcused absences over the course of a month?
>
> VE: Really no more than one per month, Your Honor.
>
> ALJ: All right. So, if someone has four or more days a month of unexcused absences, would these or any jobs be available?
>
> VE: No, Your Honor.

(Tr. 58–59.)

Despite this exchange, the ALJ did not discuss the impact of absenteeism in the decision. Altogether, the decision includes only one reference to absences, when the ALJ acknowledged but discredited Plaintiff's neurologist's opinion, provided via a checkbox form, that Claimant would be unable to work full-time and that Plaintiff's impairments would "result[] in her requiring three absences per month." (Tr. 28, 687, 692.) In specifying the reasons for discrediting this opinion, the ALJ did not mention absenteeism. (Tr. 28.)

This sole mention of absenteeism does not suffice to allow this Court meaningful review of the ALJ's decision. Indeed, the ALJ did not mention in the opinion that Claimant had 79 medical appointments in 26 months or that the vocational expert had testified, based on the ALJ's questioning, that Claimant could not be absent more than one day of work per month. <u>Dennis</u> did not establish a threshold for a specific number of medical appointments a claimant must have in a certain amount of time, nor did it set forth a bright-line rule about what ALJs must consider as to absenteeism. But it did instruct that the ALJ discuss absenteeism. Because the ALJ did not engage

with the issue of absenteeism, the Court cannot "meaningful[ly] review" the ALJ's decision. Dennis, 2023 WL 2945903, at *5–6.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that this case is **REMANDED**[4] to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Signed: March 20, 2025

Frank D. Whitney
United States District Judge

---

[4] In remanding the Commissioner's decision, the Court expresses no opinion on the merits of Plaintiff's claim for disability. The Court expressly provides that an order of "remand" here does not mandate a finding of disability. The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. See, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" (citations omitted)).